UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GRASSO FOODS, INC. | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | |
| | : | Civil No. 21-17788 |
| v. | : | |
| | : | **OPINION** |
| ENTEX TECHNOLOGIES, INC. | : | |
| *Defendant*. | : | |

Plaintiff Grasso Foods Inc. ("Grasso") purchased water treatment equipment from Defendant Entex Technologies, Inc. ("Entex") and filed this action after the equipment did not work as expected. Grasso filed the present motion to transfer this case to a federal court in North Carolina or, alternatively, to dismiss certain claims alleged in the complaint. For the reasons provided below, the Court agrees that venue is improper in this Court, but will dismiss the case rather than transfer the case to a federal court in North Carolina. The Court will therefore grant Entex's motion in part and deny the motion in part.

**I.   Background**

Grasso is a New Jersey corporation with a principal place of business in New Jersey. [Compl. ¶ 1]. Grasso processes and sells "frozen peppers to customers throughout North America." [Compl. ¶ 7]. Entex is as North Carolina corporation that operates principally in North Carolina. [Compl. ¶ 2]. Entex is "in the wastewater treatment solution business." [Compl. ¶ 8]. Based on Entex's advertising, Grasso sought to purchase a "WaveTex" aeration system (the "System") from Entex to "increase oxygen to [Grasso's] primary waste pond." [Compl. ¶¶ 11, 14–17].

1

Entex provided Grasso with a "Firm Quote" which identifies the System that Entex would sell to Grasso for $240,000 (the "Firm Quote"). [Compl. ¶¶ 18–21]. The Firm Quote states that "[t]his fully executed Firm Quote shall constitute a valid and binding purchase order." [Dkt. 9-3 ¶ 13]. Relevant to the present motion, Paragraph 11 of the Firm Quote states:

> 11. All accounts over 60 days shall be subject to a 1 and ½% per month delinquency charge. If collection action is required, Buyer shall be responsible for all attorneys' fees and court costs. **Venue for this purchase order shall be Orange County, NC.**

[Dkt. 9-3 ¶ 11]. The Court will refer to the forum-selection clause bolded above as the "FSC." The Firm Quote indicates that the System would be delivered "Ex Works Factory" which, according to Grasso, required Grasso to pick up the System from Entex's facilities in North Carolina. [Dkt. 9-3 at 1; Dkt. 20 at 11]. Grasso purchased the System for $240,000 under the terms provided in the Firm Quote. Grasso alleges that the System has never worked as Entex represented and that Entex has failed to modify the System so that it would work as represented. [Compl. ¶¶ 25–27].

Grasso filed this lawsuit alleging breach of contract, unjust enrichment, and common-law fraud based on the System's failure to function properly. [*See* Compl. ¶¶ 30–44]. Entex then filed the present motion to transfer venue under 28 U.S.C. § 1404 and, alternatively, to dismiss Grasso's unjust enrichment and fraud claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [*See* Dkt. 9]. Per the Court's instruction, [Dkt. 19], the parties submitted supplemental briefing on the issue of which state's law applies the interpretation of ¶ 11 of the Firm Quote. [Dkt. 20, 21].

## II. Analysis

The Court first considers Entex's motion to transfer venue. The Court ultimately agrees with Entex that venue is improper in this Court. The Court therefore declines to rule on Entex's motion to dismiss Grasso's fraud and unjust enrichment claims for failure to state a claim.

### a. Legal Standard for Venue Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Typically, courts weigh four factors when exercising their discretion to transfer venue under § 1404(a):

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors affecting the convenience of the forum.

*Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citations and quotations omitted). But the presence of a mandatory and enforceable "forum selection clause alters this analysis." *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017). When the parties have agreed to a forum through a forum selection clause, "[a] plaintiff's choice of forum in filing his or her lawsuit 'merits no weight,' and [courts] are not to consider any arguments about the parties' private interests—those 'weigh entirely in favor of the preselected … forum.'" *Id.* (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63–64 (2013)). Thus, courts may only consider factors (2) and (4), which "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (quoting *Atl. Marine Const.*, 571 U.S. at 63).

Parties may challenge transfer under a forum-selection clause in other ways as well. For example, an opposing party may overcome a transfer motion by showing that the legal claims exceed the scope of the forum-selection clause. *See 151 Foods, LLC v. Cummings Atlanta LLC*, No. 19-CV-17093, 2021 WL 4077560, at *3 (D.N.J. Sept. 8, 2021) (citing *Collins*, 874 F.3d at 180–81). Parties may also challenge a forum-selection clause's enforceability. *Id.* "A court examining the enforceability of a clause considers whether compelling compliance with the clause is 'unreasonable under the circumstances.'" *Collins*, 874 F.3d at 181 (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)). A forum-selection clause is "unreasonable" if the opposing party "can make a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.'" *Foster*, 933 F.2d at 1219 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972); *accord Collins*, 874 F.3d at 181 (citations and quotations omitted).

### b. Analysis

Entex asks the Court to enforce the FSC and to transfer this case to the United States Court for the Middle District of North Carolina. [Dkt. 9-1 at 10]. Again, the FSC is located in ¶ 11 of the Firm Quote which states:

> 11. All accounts over 60 days shall be subject to a 1 and ½% per month delinquency charge. If collection action is required, Buyer shall be responsible for all attorneys' fees and court costs. **Venue for this purchase order shall be Orange County, NC.**

[Dkt. 9-1 at 10 (emphasis added)]. Entex contends that the FSC bolded above applies to this dispute and requires Grasso to litigate in the Middle District of North Carolina, the federal court with jurisdiction over Orange County. [Dkt. 9-1 at 10].

Grasso opposes this transfer motion for four reasons. First, Grasso claims that this case exceeds the scope of the FSC as written in ¶ 11 because the FSC only concerns collection actions for delinquent payments. [Dkt. 13 at 10–11]. Second, Grasso alternatively argues that the FSC is ambiguous as to its scope and therefore unenforceable. [*Id.* at 12–14]. Third, Grasso contends that the FSC is unenforceable because it is permissive rather than mandatory. [*Id.* at 14–15]. Finally, Grasso argues that public interest factors do not favor venue transfer even if the FSC is enforceable and applies to Grasso's claims. [*Id.* at 15–18].

### i. Whether State or Federal Law Applies, and to Which Arguments

Before addressing the merits of these arguments, the Court must determine whether state or federal law applies to each argument. In *Collins on behalf of Herself v. Mary Kay, Inc.*, the Third Circuit held that federal law applies when determining the "enforceability of forum selection clauses," and state contract law applies when interpreting forum-selection clauses. 874 F.3d at 181–82. The *Collins* court found that this approach reflects the principle from *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938), that "federal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues." *Id.* at 181. According to *Collins*, "questions of enforceability" of forum-selection clauses are "procedural," but "[i]ssues of contract interpretation are considered 'quintessentially substantive,' rather than procedural." *Id.* at 181–82. The *Collins* court observed that "applying federal common law to interpret a forum selection clause frustrates the principles of *Erie* [because] '[c]onstruing a forum selection clause[]' may involve 'a wide range of contract law issues, from the treatment of ambiguous phrases ... to the admissibility of parol evidence….'" *Id.* at 182 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014)).

The Court must now apply this distinction between "interpretive" and "enforceability" questions to the arguments that Grasso raises concerning the scope of the forum-selection clause, whether the forum-selection clause is ambiguous, whether the forum-selection clause is mandatory, and whether public interest factors favor transfer. The scope of a forum-selection clause is a contract interpretation issue governed by state law. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)). Whether the forum-selection clause is "ambiguous" is likewise a question of contract interpretation governed by state law. *See Collins*, 874 F.3d at 182 (noting that "treatment of ambiguous phrases" is a state-law contract interpretation issue).

Courts have disagreed on how to classify the question of whether a forum-selection clause is mandatory or permissive. Some courts have found the question to be an "interpretive" issue governed by state law, while others have concluded that it is an "enforceability" issue governed by federal law.[1,2] But this Court recently treated the issue as an enforceability issue

---

[1] *Compare, e.g.*, *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073, 1073 n.1 (5th Cir. 2020) (applying state law to determine whether a forum-selection clause was mandatory and federal law to determine if the clause was "enforceable."); *Meridian Consulting I Corp., Inc. v. Eurotec Canada Ltd.*, No. CV1922197KMESK, 2021 WL 689132, at *10–*11 (D.N.J. Feb. 22, 2021) (applying state contract law to determine whether a forum-selection clause was mandatory); *Howmedica Osteonics Corp. v. Howard*, No. CV1919254SDWLDW, 2020 WL 1102494, at *3 n.2 (D.N.J. Jan. 17, 2020), *report and recommendation adopted*, No. 19-19254 (SDW) (LDW), 2020 WL 1082601 (D.N.J. Mar. 5, 2020) (noting that state law governs questions of whether a forum-selection clause is mandatory) *with 151 Foods*, 2021 WL 4077560, at *3 (applying federal law to question of whether forum-selection clause is mandatory); *The Indian Express Priv. Ltd. v. Hali,* No. CV202741ESCLW, 2022 WL 154354, at *4 (D.N.J. Jan. 18, 2022) (same); *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. CIV.A. 13-7318 JBS, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (considering whether a clause was mandatory without considering which state's law applied).

[2] In supplemental briefing, Entex argues that federal law applies to this issue, [Dkt. 21 at 5–6], while Grasso argues that state law applies. [Dkt. 20 at 6–9].

governed by federal law and will do so again here. *See 151 Foods*, 2021 WL 4077560, at *3 ("Being procedural, the Court will analyze this argument [that a forum-selection clause is permissive] under federal law." (citing *Collins*, 874 F.3d at 181)). Finally, the "public interest" consideration is a question of federal law. *See, e.g.*, *Corsentino v. Meyer's RV Centers LLC*, No. CV 20-03287 (FLW), 2020 WL 4199744, at *4–*6 (D.N.J. July 22, 2020) (applying federal law exclusively to the public interest analysis).

### ii. Which State's Law Applies

The Court must now determine which state's law applies to the scope and ambiguity questions governed by state law. Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state to determine which state's law applies to state law claims. *NL Indus., Inc. v. Com. Union Ins. Cos.*, 926 F. Supp. 1213, 1219 (D.N.J.), *as amended* (June 11, 1996), *on reconsideration*, 938 F. Supp. 248 (D.N.J. 1996) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "New Jersey has adopted 'the most significant relationship' test set out in the Restatement (Second) of Conflict of Laws." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180 (3d Cir. 2014) (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459–60 (N.J. 2008)). "Under this test, courts first inquire whether an actual conflict exists between the laws of the potentially relevant states." *Id.* A conflict exists where the laws of the relevant jurisdictions would produce a different result on the issue presented. *See Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *5 (D.N.J. Jan. 24, 2014) (quoting 15A C.J.S. Conflict of Laws § 30 (2013) and *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997)).

If no conflict exists, a court may use the laws of the relevant states interchangeably. *800 Cooper Fin., LLC v. Liu*, No. CV 16-736 (JHR/JS), 2022 WL 855647, at *3 (D.N.J. Mar. 22, 2022) (quoting *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016)).

But "[i]f the court finds an actual conflict of laws exists, it proceeds to step two, where it 'must determine which state has the most significant relationship to the claim, by weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.'" *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) (quoting *Cox v. Chrysler Grp., LLC*, No. CV 14-7573(MAS)(DEA), 2015 WL 5771400, at *4 (D.N.J. Sept. 30, 2015)) (alteration in original). For claims grounded in contracts that do not include choice-of-law clauses such as those at issue here, courts turn to §§ 188 and 6 of the Second Restatement. *See id.*

Applying New Jersey's choice-of-law rules here, the Court must first consider whether the relevant law of any interested states conflict. The only states potentially interested in the outcome of this case are New Jersey and North Carolina. New Jersey is where Grasso is incorporated and principally operates, and where the System was installed. North Carolina is where Entex is incorporated and principally operates, and where Grasso picked up the System. Thus, the Court must consider the law of New Jersey and North Carolina.

The parties do not argue that a conflict exists with respect to the issues that require application of state law, namely, the scope of the FSC and whether the FSC is ambiguous. [*See* Dkt. 19, 20].[3] Because no conflict exists, the Court need not proceed to step two of New Jersey's choice-of-law analysis and can apply New Jersey and North Carolina law interchangeably to the

---

[3] In supplemental briefing, Grasso argues that New Jersey law conflicts with North Carolina law with respect to determining whether a forum-selection clause is mandatory or permissive. [Dkt. 20 at 9]. As decided above, federal law applies to this issue rather than state law. Moreover, in raising this argument, Grasso cites to North Carolina state court cases, but only supports its interpretation of New Jersey law with citations to federal cases that do not purport to apply New Jersey state law. [Dkt. 20 at 8–9].

claims where state law governs. *800 Cooper Fin.*, 2022 WL 855647, at *3 (quoting *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016)).

### iii. Scope and Ambiguity

The parties first disagree as to whether the dispute in this case falls within the FSC's scope. "[W]hether or not a forum selection clause applies [to a particular dispute] depends on what the *specific clause at issue says*." *John Wyeth & Bro.*, 119 F.3d at 1075 (emphasis in original). To assess the scope of a forum-selection clause, the courts must "look to the text of the contract to determine whether it unambiguously states the parties' intentions. To be 'unambiguous,' a contract clause must be reasonably capable of only one construction." *Id.* at 1074 (citing *Am. Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 580–81 (3d Cir. 1995)).

Grasso argues that the FSC's plain language and logical relationship to the sentences that precede it dictate that FSC only applies to collection actions for delinquent payments. [Dkt. 13 at 11]. Grasso points out that ¶ 11 of the Firm Quote contains three sentences, the first two of which discuss interest on and collection actions for delinquent payments. The FSC immediately follows these two sentences. According to Grasso, "[t]he only logical interpretation is that the last sentence of [¶ 11] relates to [Entex's] collection efforts." [Dkt. 13 at 12]. Entex responds that neither the FSC's location in ¶ 11 nor the two sentences that precede the FSC in ¶ 11 limit the FSC's application to collection actions. [Dkt. 18 at 5-7].

The Court agrees with Entex. The FSC states that "[v]enue for this purchase order shall be Orange County, NC." In this context "for" means "with respect to: concerning." *For*, Merriam-Webster, https://www.merriam-webster.com/dictionary/for. Thus, the word "for" suggests that the FSC applies broadly to any dispute "concerning" the Firm Quote. Even though

9

the two sentences that precede the FSC in ¶ 11 address collection actions, the FSC itself does not limit the FSC's scope to collection actions or indicate that the FSC is subordinate to the two sentences that precede it. *Cf. Hickox v. R&G Grp. Int'l, Inc.*, 588 S.E.2d 566, 568–69 (N.C. App. 2003) (finding that the scope of a choice-of-law clause which governed "any dispute which may arise in connection with the performance" of a contract was broader than the scope of a forum-selection clause that only applied to "disputes arising from … orders or commissions" contemplated in the contract). Because this lawsuit concerns a breach of Entex's obligations under the Firm Quote, the lawsuit "concerns" the Firm Quote and falls within its scope. *See Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. App'x 82, 85–86 (3d Cir. 2006) (finding that a clause stating "[t]his Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania" established venue for a dispute over a lease agreement).

Interpreting the FSC's scope in this manner best effectuates the parties' intentions as set forth in the Firm Quote's plain language. *See Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 570 (D.N.J. 2003) ("The principal goal of contract interpretation is to "ascertain and effectuate the objectively manifested intentions of the contracting parties." (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999))). Subordinating the FSC to the two sentences that precede it as Grasso suggests—such that the FSC only applies to collection actions—would render the broadly worded phrase "for this purchase order" meaningless or modify its meaning beyond recognition. By contrast, interpreting the FSC to apply to this lawsuit does not cause the FSC to conflict with the other provisions within ¶ 11 or elsewhere in the Firm Quote, or deprive

10

any other provision of its meaning.[4] Given these two options, the Court must disagree with Grasso's interpretation. *See Subaru of Am., Inc. v. DDB Worldwide Commc'ns Grp., Inc.*, No. CIV.A. 08-6218 JEI, 2010 WL 1257732, at *2 (D.N.J. Mar. 25, 2010), *adhered to on reconsideration*, No. CIV.A. 08-6218 (JEI), 2010 WL 2680284 (D.N.J. July 1, 2010) ("[A]n interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (quoting Restatement (Second) of Contracts, § 231 (1981))).

Grasso contends that, if the Court finds that the FSC's scope includes this lawsuit, the Court should find that the FSC is ambiguous for four reasons. [Dkt. 13 at 12–13]. The Court does not find these arguments to be persuasive.

Grasso's first argument relies on a flawed approach to contract interpretation. Grasso argues that its interpretation of the FSC—which holds that the two preceding sentences in ¶ 11 indicate that the FSC applies only to collection suits—is a "reasonable way" to interpret the FSC, and that ambiguity arises where contract language permits more than one reasonable interpretation. The Court agrees that ambiguity arises where two or more reasonable interpretations of contract language are available. *See Wall St. Aubrey Golf*, 189 F. App'x at 85. But when determining whether a forum-selection clause is "ambiguous," courts typically look first and foremost to the clause itself.[5] Grasso asks the Court to do the opposite, and to use

---

[4] For example, finding that the FSC applies to all lawsuits concerning the Firm Quote does not change the appropriate venue for collection actions or create a conflict between the proper venue for collection actions and all other lawsuits.

[5] *See, e.g. Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454, 460 (D.N.J. 2001), *aff'd*, 36 F. App'x 491 (3d Cir. 2002); *see also John Wyeth & Bro.*, 119 F.3d at 1075 ("[W]hether or not a forum selection clause applies [to a particular dispute] depends on what the *specific clause at issue says*." (emphasis in original)); *LG Elecs. U.S.A., Inc. v. Actionlink, LLC*, No. 15-5472 (MCA), 2015 WL 6673884, at *3 (D.N.J.

11

provisions adjacent to the FSC to inject ambiguity into the otherwise unambiguous FSC. Contract interpretation rules preclude such a reading of the FSC.  *See Wall St. Aubrey Golf*, 189 F. App'x at 85 ("The court should ... avoid ambiguities, if the plain language of the contract permits .... [and] should not torture the language ... to create ambiguities." (quoting *First State Underwriters Agency of New England Reins. Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1311 (3d Cir. 1986))) (alteration and ellipses in original).  The Court rejects this interpretation of the FSC.

Relatedly, Grasso argues that if Entex "intended for Orange County to be the sole venue for all claims, it would have stated that clearly in a separate section [of the Firm Quote] and not limited it to collection efforts."  [Dkt. 13 at 13].  But as decided above, the FSC is not "limited to collection efforts," and the two sentences that precede the FSC do not alter this conclusion. Entex did not need to place the FSC in a separate section of the Firm Quote for the FSC itself to be unambiguous, and Grasso has not identified any authority stating otherwise.  Moreover, if the parties intended for the FSC to apply only to collection actions, they could have drafted the FSC more narrowly to say, for example, "venue for collection actions…." rather than "venue for this purchase order…."

Grasso next argues that the FSC is ambiguous because it only selects Orange County, North Carolina as the proper venue and is "silent as to whether state or federal court is the proper venue, or any court at all."  [Dkt. 13 at 13].  But courts routinely enforce forum-selection clauses

---

Oct. 30, 2015) ("If the language of the forum selection clause is unambiguous, 'the inquiry ends and the court must enforce the contract as written.'" (quoting *Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.*, 537 F. Supp. 2d 672, 674–75 (D.N.J. 2008))); *Sahara Sam's Oasis, LLC v. Adams Cos., Inc.*, No. CIV.A. 10-0881, 2010 WL 3199886, at *4 (D.N.J. Aug. 12, 2010) (finding that an untrue fact in an adjacent provision did not render a forum-selection clause ambiguous).

that identify counties as the proper venue for lawsuits rather than a particular court.  *See Wall St. Aubrey Golf*, 189 F. App'x at 85–86 (finding a clause that selected "Butler County, Pennsylvania" as the proper venue required transfer to a court in Butler County, Pennsylvania); *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674–75 (4th Cir. 2018) (enforcing a clause that selected a county as the proper forum and noting that "every circuit to have addressed this issue" has done the same (collecting cases)).  Which court within Orange County is proper is a separate issue that the Court will consider below, but the failure to identify a specific court does not render the FSC ambiguous.

Finally, Grasso argues that the term "this purchase order" in the FSC does not refer to any agreement between the parties because the document containing the FSC is titled "Firm Quote."  [Dkt. 13 at 13].  The Court rejects this argument.  Paragraph 13 clarifies any ambiguity when it states "[t]his fully executed Firm Quote shall constitute a valid and binding purchase order."  [Dkt. 9-3 at 3].  The "Firm Quote" and "purchase order" are the same.

In sum, the Court finds that the FSC's scope includes the claims raised in this case and that the FSC is not ambiguous.  The Court rejects Grasso's arguments to the contrary.

### iv.  Mandatory or Permissive

As noted above, the Court will apply federal law to determine whether the FSC is mandatory or permissive.  "A mandatory forum selection 'identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship.'"  *Asphalt Paving Sys.*, 2015 WL 167378, at *5 (quoting *Int'l Bus. Software Sols., Inc. v. Sail Labs Tech.*, 440 F. Supp. 2d 357, 363 n.1 (D.N.J. 2006)).  By contrast, a permissive forum-selection clause "merely specifies [a] court empowered to hear litigation."  *Int'l Bus. Software Sols.*, 440 F. Supp. 2d at 363 n.2 (quoting *S & D Coffee, Inc. v. GEI Autowrappers*, 995

13

F. Supp. 607, 609 (M.D.N.C. 1997)). In the Third Circuit, use of the word "shall" means that a forum-selection clause is mandatory, even if the clause does not contain language stating that the selected forum is "exclusive." *Wall St. Aubrey Golf*, 189 F. App'x at 86–87 (finding that the word "shall" rendered a forum-selection clause mandatory); *Asphalt Paving Sys.*, 2015 WL 167378, at *5 (finding that "inclusion of the word 'shall' sufficiently evinces a forum selection clause's mandatory nature" and that "a forum selection clause need not contain language such as 'exclusive' or 'sole' in order to be mandatory." (citations and quotations omitted)); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 687 (D.N.J. 1998) (finding that the word "shall" in a forum-selection clause indicated that the clause was mandatory and exclusive).

Applying this law to the FSC's plain language, the Court finds that the FSC is mandatory. Again, the FSC states that "[v]enue for this purchase order shall be Orange County, NC." The term "shall" makes the FSC mandatory. *Wall St. Aubrey Golf*, 189 F. App'x at 86–87.

### c. Public Interest Factors

Finally, Grasso argues that public interest considerations under § 1404(a) require the Court to deny Entex's request to transfer venue.

While an "agreement as to the most proper forum" is "entitled to substantial consideration," the agreement "should not receive dispositive weight." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). Thus, courts must confirm that public interests of other potential fora do not disfavor transfer. *See id.* Courts in the Third Circuit consider the following factors:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6)

> the familiarity of the trial judge with the applicable state law in diversity cases.

*Corsentino v. Meyer's RV Centers LLC*, No. CV 20-03287 (FLW), 2020 WL 4199744, at *4 (D.N.J. July 22, 2020) (quoting *Jumara*, 55 F.3d at 879–80).  These factors "will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Const.*, 571 U.S. at 64.

These public interest factors do not overcome the "strong presumption in favor of enforcing the [FSC]" in this case. *Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, No. CV 20-6180, 2021 WL 268176, at *7 (D.N.J. Jan. 27, 2021).  Factors (1)–(4) and (6) do not favor one venue over the other.  With respect to factor (1), neither side has indicated that venue would affect the enforceability of a judgment.  As to factor (2), one party will inevitably be inconvenienced, as the parties are companies incorporated in and operating principally out of different states, and one party will have to travel more than the other.  With respect to factor (3), the "relative congestion of the respective courts' dockets [is] of minimal importance in the overall transfer inquiry." *Asphalt Paving Sys.*, 2015 WL 167378, at *7 (quoting *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008)).  Factor (4) similarly does not favor either venue because "both fora have ties to the facts at issue in Plaintiff's case." *Yocham*, 565 F. Supp. 2d at 559.  Grasso is incorporated and operates principally in New Jersey and installed and attempted to use the System in New Jersey.  But Entex is incorporated in and operates principally in North Carolina, and marketed and sold the System from North Carolina.  Thus, "[t]his is not a case in which a plaintiff has chosen a forum with little or no apparent connection to the facts at issue in the case." *Id.*  The Court also assumes that a trial court judge in North Carolina is equally familiar with and capable of ruling on common-law breach of

15

contract, fraud, and unjust enrichment claims as this Court.[6]  Thus, factor (6) does not favor either venue.

With respect to factor (5), Grasso concedes that "North Carolina has the most significant relationship to the parties," [Dkt. 20 at 10–13], and acknowledges that performance of the contract occurred in North Carolina, where the Firm Quote required Grasso to pick up the System.  [*Id.*].  Based on Grasso's own arguments, the Court does not see how New Jersey's interest in this litigation is strong enough to overcome the FSC's selection of North Carolina as the proper forum for this case.

In sum, the public interest factors do not present circumstances so "unusual" that they overcome the presumption in favor of enforcing the FSC.  *Atl. Marine Const.*, 571 U.S. at 64.  Grasso has therefore failed to carry its "burden of demonstrating why [the parties] should not be bound by their contractual choice of forum."  *Jumara*, 55 F.3d at 880.

### d. Remedy

Having found that the FSC controls, the court must determine the appropriate remedy.  The FSC selects Orange County, North Carolina as the mandatory venue for all disputes concerning the Firm Quote.  [Dkt. 9-3 ¶ 11].  Entex asks the Court to transfer the case to the United States District Court for the Middle District of North Carolina which "encompasses Orange County, North Carolina." [Dkt. 9-1 at 14].

---

[6] Grasso argues that North Carolina and New Jersey law differ with respect to the elements of breach of contract, fraud, and unjust enrichment claims.  [Dkt. 13 at 16–18].  Grasso argues that these differences favor New Jersey as a venue.  [*Id.*].  The Court disagrees.  It is not clear that the elements differ in practice, as Entex cites different cases from both states which suggest that the elements of these claims are "materially identical." [Dkt. 9-1 at 13–14].  But even if distinctions exist, Grasso but does not explain why these distinctions matter or show why this Court is better suited than a court elsewhere to analyze these elements.  Moreover, if the laws of the two states conflict, a court here or in North Carolina would have to conduct a choice-of-law analysis that could require application of the other state's law.  *See Yocham*, 565 F. Supp. 2d at 559.

The FSC does not permit the Court to transfer this case to the Middle District of North Carolina. The Middle District of North Carolina has jurisdiction over Orange County, North Carolina," but only sits in Durham, Greensboro, and Winston-Salem. See 28 U.S.C. § 113(b). Thus, while Orange County is in the Middle District, the Middle District is not in Orange County. It is therefore "physically and logically impossible for a federal district court to hear the case" in Orange County as the FSC requires, so the Court cannot transfer the case to another federal district court. *Wall St. Aubrey Golf*, 189 F. App'x at 87. "Because '[t]ransfer is not available ... when a forum selection clause specifies a non-federal forum,' dismissal is the sole option." *Id.* (quoting *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001)). The Court will therefore dismiss the case.

### III. Conclusion

For the reasons set forth above, the Court agrees with Entex that this Court is not the proper venue for this case, but must dismiss the case rather than transfer the case to another federal district court. An appropriate order will follow.

June 7, 2022                                              /s/ Joseph H. Rodriguez
                                                          Hon. Joseph H. Rodriguez, USDJ